IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PHILIP CHARVAT, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TOMORROW ENERGY CORP., f/k/a SPERIAN ENERGY CORP., and JOHN DOE CORPORATION,<br><br>Defendants. | Case No. 2:20-cv-1064<br><br>CLASS ACTION COMPLAINT |

**CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Plaintiff Philip Charvat ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Defendant Tomorrow Energy Corp., f/k/a Sperian Energy Corp. ("Tomorrow Energy"), hired John Doe Corporation (collectively referred to as "Defendants") to originate new energy leads for its company. John Doe Corporation, with the knowledge and acceptance of Tomorrow Energy, generated those leads by making prerecorded telemarketing calls to Mr. Charvat's residential telephone number, which is prohibited by the TCPA.

3. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of

thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure

### Parties

5. Plaintiff Philip Charvat is an Ohio resident and a resident of this district.

6. Defendant Tomorrow Energy Corp. has its principal place of business in Houston, Texas, with a registered agent of Corporation Services Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701 and solicits business with consumers in this district.

7. Defendant John Doe Corporation is a telemarketing company hired by Defendant Tomorrow Energy to make telemarketing calls to generate new customers.

### Jurisdiction & Venue

8. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

9. Defendants regularly engage in business in this district, including authorizing telemarketing calls into this district, and soliciting business from this district for its regionalized energy programs. Furthermore, Defendants provide Ohio residents with services in this district. John Doe Corporation made prerecorded telemarketing calls into this district, as it did with Mr. Charvat.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district, as the telemarketing calls to the Plaintiff occurred in this district.

**The Telephone Consumer Protection Act**

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls</u>

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." *See* 47 U.S.C. § 227(b)(1)(B).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. [] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. []"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

**The Growing Problem of Automated Telemarketing**

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

17. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

18. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

19. *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203.

20. A technology provider combating robocalls warned that nearly half of all calls to cellphones next year will be fraudulent. Press Release, First Orion, *Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls in 2019* (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html.

**Defendants' Illegal Telemarketing**

21. Defendant Tomorrow Energy is an electric and natural gas supplier that attempts to sell its services to residents of Ohio.

22. Defendants use telemarketing to promote their products.

23. Defendants' telemarketing efforts include the use of prerecorded messages to send telemarketing calls.

24. However, Defendant Tomorrow Energy's contact with potential customers is done through third parties, such as John Doe Corporation.

25. Recipients of these calls, including Plaintiff, did not consent to receive them.

## The Calls to Mr. Charvat

26. Plaintiff Charvat is a "person" as defined by 47 U.S.C. § 153(39).

27. Plaintiff has two residential telephone numbers, (614) XXX-8940 and (614) XXX-1351.

28. The numbers are used for residential purposes and are not associated with any business.

29. John Doe Corporation placed a prerecorded telemarketing call to Plaintiff's 8940 number on October 30, 2019.

30. The prerecorded message discussed a rebate check for energy services. The prerecorded message contained the same, or substantially the same, message as the one quoted below in Paragraphs 33 and 40.

31. John Doe Corporation placed a prerecorded telemarketing call to Plaintiff's 1351 number on October 30, 2019.

32. A prerecorded message was then played.

33. The prerecorded message stated, in part:

> You will be receiving a rebate check along with a 30% discount on your electric and gas bills. Please press one to get your rebate check.

34. The company was not identified in the prerecorded message, so the Plaintiff responded to speak with a live individual.

35. The Plaintiff spoke to "Adam," who had the Plaintiff's name and address.

36. Plaintiff asked for the name of the calling entity, but "Adam" refused to provide it.

37. "Adam" disconnected the line after Plaintiff asked for the telephone number of the calling entity.

38. John Doe Corporation placed a prerecorded telemarketing call to Plaintiff's 1351 number on November 6, 2019.

39. A prerecorded message was then played.

40. The prerecorded message stated, in part:

> You will be receiving a rebate check along with a 30% discount on your electric and gas bills. Please press one to get your rebate check.

41. The company was not identified in the prerecorded message, so the Plaintiff responded to speak with a live individual.

42. The Plaintiff spoke to "John Dominic."

43. Mr. Charvat was able to identify the Defendant by engaging the telemarketer in conversation to confirm the name of the entity whose services were being offered.

44. Mr. Dominic repeatedly identified Tomorrow Energy as the company whose services were being offered in the telemarketing call.

45. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls, and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

**Tomorrow Energy's Liability for the Conduct of John Doe Corporation**

46. Tomorrow Energy is a "person," as defined by 47 U.S.C. § 153(39).

47. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

48. In its January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

49. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Tomorrow Energy may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules,* 28 FCC Rcd. 6574, 6588, ¶ 37 (2013) ("May 2013 FCC Ruling") (internal citations omitted).

50. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586, ¶ 34.

51. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third party who placed the telemarketing call. *Id.* at 6587 n.107.

52. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at ¶ 46.

53. Tomorrow Energy is legally responsible for ensuring that John Doe Corporation complied with the TCPA, even if Tomorrow Energy itself did not make the calls.

54. Tomorrow Energy has received complaints about the telemarketing conduct of its third-party vendors, including a John Doe entity, has continued to do business with them, and has

knowingly and actively accepted business that originated through the illegal telemarketing calls from John Doe Corporation.

55. Moreover, Tomorrow Energy maintained interim control over John Doe Corporation's actions.

56. For example, Tomorrow Energy had absolute control over whether, and under what circumstances, it could issue a quote to a prospective customer or take over their energy needs.

57. Tomorrow Energy also gave interim instructions to John Doe Corporation by providing: (1) geographic parameters for potential customers that John Doe Corporation could telemarket to; (2) the volume of calling and leads it would purchase; and (3) the timing that Tomorrow Energy telemarketing personnel would be available to field a prospect.

58. As a result, Tomorrow Energy not only controlled the result of the work, but also the means by which it was accomplished through interim instructions.

**Class Action Statement**

59. As authorized by Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

60. The class of persons Plaintiff proposes to represent includes:

Prerecorded Telemarketing Call to Residential Line Class

All persons within the United States: (a) to whom John Doe Corporation, and/or a third party acting on John Doe Corporation's behalf, made one or more non-emergency telephone calls; (b) promoting Tomorrow Energy's products or services; (c) to a residential telephone number; (d) using an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

61. Excluded from the class are the Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of the judge's staff and immediate family.

62. The proposed class members are identifiable through phone records and phone number databases.

63. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

64. Plaintiff is a member of the proposed class.

65. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether John Doe Corporation used prerecorded messages to make the calls at issue;

    b. Whether John Doe Corporation placed telemarketing calls without obtaining the recipients' valid prior express written consent;

    c. Whether Defendants' violations of the TCPA were negligent, willful, or knowing; and

    d. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendants' actions.

66. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members and, therefore, are typical of the claims of class members, as the Plaintiff and class members all received telephone calls through the same automated telemarketing process.

67. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the

class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

68. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

69. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case and given the small recoveries available through individual actions.

**Legal Claims**
**Count One:**
**Violations of the TCPA, 47 U.S.C. § 227(b)**

70. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

71. The foregoing acts and omissions of the Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with a prerecorded message to the residential telephone line of the Plaintiff.

72. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the class presumptively are entitled to an award of $500 in damages for each and every call made.

73.     Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any residential number using an artificial or prerecorded voice in the future.

74.     The Defendants' violations were negligent, willful, or knowing.

### Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A.      Certification of the proposed class;

B.      Appointment of Plaintiff as representative of the class;

C.      Appointment of the undersigned counsel as counsel for the class;

D.      A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.      An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, to any residential number using an artificial or prerecorded voice in the future;

F.      An award to Plaintiff and the class of damages, as allowed by law;

G.      Leave to amend this Complaint to conform to the evidence presented at trial; and

H.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

**/s/ Brian K. Murphy**
Brian K. Murphy, Trial Attorney (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

Anthony I. Paronich (pro hac vice to be filed)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com