# EXHIBIT 1

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| PHILIP CHARVAT, individually and on behalf of a class of all persons and entities similarly situated, | § § Case No. 2:20-cv-01064-ALM-KAJ § |
| Plaintiffs, | § § § |
| vs. | § § |
| TOMORROW ENERGY CORP., f/k/a SPERIAN ENERGY CORP., VESTRA ENERGY, INC., and SEAN GROVE, | § § § § |
| Defendants. | § § § |
| TOMORROW ENERGY CORP., a Nevada corporation, | § § § |
| Crossclaimant, | § § |
| vs. | § § |
| VESTRA ENERGY, INC., a Wyoming corporation, and SEAN GROVE, an individual, | § § § |
| Cross-Defendants. | § § |

## CROSSCLAIM BY TOMORROW ENERGY CORP. AGAINST VESTRA ENERGY, INC. AND SEAN GROVE

123533429

Tomorrow Energy Corp ("Tomorrow Energy") alleges the following against Vestra Energy, Inc. ("Vestra") and Sean Grove ("Mr. Grove") (together, the "Vestra Parties").

## INTRODUCTION

1.      Tomorrow Energy brings this Crossclaim for breach of contract, contractual indemnity, and declaratory relief against the Vestra Parties arising from a Master Tele-Sales Agreement (the "Agreement") entered between and among Tomorrow Energy and Vestra, and personally guaranteed by Mr. Grove, on March 21, 2019.  A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

2.      The Vestra Parties' obligations under the Agreement cover all costs and expenses, including attorney's fees, incurred by Tomorrow Energy in connection with the claims by Plaintiff Philip Charvat ("Mr. Charvat") in the above-entitled lawsuit against Tomorrow Energy (the "Charvat Claims").

## PARTIES, JURISDICTION, AND VENUE

3.      Tomorrow Energy is now, and was at all times relevant, a Nevada corporation and headquartered in Texas.  Tomorrow Energy is in the business of selling electricity, gas, and related services to residential and commercial customers.

4.      Upon information and belief, Vestra is now, and was at all times relevant, a Wyoming corporation.

5.      Upon information and belief, Mr. Grove is now, and was at all times relevant, an individual residing in Florida.

6.      Personal jurisdiction exists with respect to the Vestra Parties because the parties contemplated that the Agreement which is the subject of this dispute would be performed in Ohio.

7.      Subject matter jurisdiction exists with respect to the Charvat Claims.  Supplemental jurisdiction is proper under 28 U.S.C. § 1367 because this Crossclaim is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  In addition, the underlying action alleges a federal question.

123533429

8.     Moreover, diversity jurisdiction exists over the claims by Tomorrow Energy against the Vestra Parties.  As set forth above, there is complete diversity of citizenship between Tomorrow Energy, on the one hand, and both of the Vestra Parties, on the other hand, as well as Charvat (who alleges that he resides in Pennsylvania).  In addition, the matter in controversy is alleged in the underlying proceeding to exceed, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

9.     Federal Rule of Civil Procedure 13(g) states that: "A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action.  The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant."

10.    Consistent with Rule 13(g), this Crossclaim arises out of the transaction or occurrence that is the subject matter of the Charvat Claims (i.e., prerecorded phone calls made by, or at the direction of, Vestra), which triggers Vestra's obligations to defend and indemnify Tomorrow Energy for conduct alleged by Charvat pursuant to the Agreement.

11.    Venue is conferred by 28 U.S.C. § 1391 because Charvat filed the above-entitled action against Tomorrow Energy in this Court, and because a substantial part of the events or omissions giving rise to the third-party claims occurred here.

12.    In addition, dismissal or transfer of claims for indemnity or contractual damages would be unreasonable given the interrelated Charvat Claims, this Court's supplemental jurisdiction over the matter, and the factors weighing in favor of this venue, such as judicial efficiency and the avoidance of inconsistent rulings.

## **GENERAL ALLEGATIONS**

*The Agreement Between Tomorrow Energy and Vestra*

13.    Paragraph 2 of the Agreement provides, in relevant part, that Vestra was to "solicit new prospective customers for Tomorrow Energy."

123533429

14.     In Paragraph 5 of the Agreement, Vestra warranted, represented, and covenanted that Vestra would "use [Vestra's] skills and abilities and perform its duties hereunder in a professional and conscientious manner in accordance with all applicable law and standards…."

15.     In Paragraph 8 of the Agreement, Vestra represented and warranted that Vestra would "conduct [Vestra's] business, as it relates to the services defined herein, in a commercially reasonable, legal and ethical manner."

16.     In Paragraph 8 of the Agreement, Vestra also represented and warranted that Vestra "shall be fully knowledgeable about all federal, state and local legal and regulatory requirements related to [Vestra's] activities and shall comply with all such requirements including but not limited to … sales, marketing and telemarketing activities and … telemarketing rules and regulations related to do-not-call lists.  [Vestra] shall be solely liable for any failure to comply or alleged violations of these requirements."

17.     In Paragraph 8 of the Agreement, Vestra also represented and warranted that Vestra "shall maintain any and all insurance applicable to the performance of its obligations hereunder as required by Law" and "agree[d] to maintain a policy of comprehensive general liability insurance to cover any negligent acts committed by [Vestra], or [Vestra's] employees or Vendors during the performance of any duties under this Agreement."  Vestra further represented and warranted that Vestra "shall have Tomorrow Energy named an 'Additional Insured' on such policy" and that Vestra would "hold Tomorrow Energy free and harmless from any and all claims arising from any such negligent act or omission."

18.     In Paragraph 19 of the Agreement, Vestra agreed that Vestra "shall comply with any and all federal, state or local laws, rules, and regulations or any other governmental or quasi-governmental rules and regulations … in regard to the conduct of Services rendered pursuant to this Agreement."

19.     In Paragraph 21 of the Agreement, Vestra agreed to indemnify Tomorrow Energy as follows:

123533429

**Indemnities:** Each Party shall defend, indemnify and hold the other Party and its affiliates, and their respective officers, directors, Vendors and representatives harmless from and against, and will solely and exclusively bear and pay, any and all claims, suits, losses, penalties, damages and all liabilities and the associated costs and expenses (including attorneys' fees) arising in connection with its breach of obligations under this Agreement, which in the case of [Vestra], shall include, but not be limited to, those incurred as a result of [Vestra] or its employees or [Vestra's] use of unapproved literature, or representations, whether written or verbal, to customers or potential customers, as well as for any claims for any errors, omissions, misconduct, or negligent acts of commission or omission.

20.     Mr. Grove personally guaranteed the Agreement.  Paragraph 14 of the Agreement provides, in relevant part:

**Personal Guaranty:**  [Mr. Grove] unconditionally and irrevocably guaranties to Tomorrow Energy the full and timely payment and performance when due of all obligations herein, and any costs of enforcement with respect to the same (the 'Guaranteed Obligations').

*The Charvat Claims*

21.     Mr. Charvat alleges that he "has two residential telephone numbers, (614) XXX-8940 and (614) XXX-1351."  (First Am. Compl. ("FAC"), ¶ 32.)

22.     Mr. Charvat alleges that Vestra placed prerecorded telemarketing calls to his 8940 number on October 30, 2019 (FAC, ¶ 34), his 1351 number on October 30, 2019 (FAC, ¶ 36), and his 1351 number on November 6, 2010 (FAC, ¶ 43).

23.     During the relevant period, Vestra was only permitted to place "opt-in" calls (*i.e.*, calls made with the prior express consent of the recipient) on behalf of Tomorrow Energy.  Vestra was not permitted to make "cold calls" or place any other outbound telemarketing calls for Tomorrow Energy.  Moreover, Vestra was not permitted to place prerecorded calls of any nature.

24.     Each time when Vestra or Vestra's agent allegedly called Mr. Charvat's telephone number, Vestra or Vestra's agent was not acting as Tomorrow Energy's authorized agent.

25.     Tomorrow Energy lacked knowledge of and control over Vestra's conduct as alleged by Mr. Charvat.

26.     Vestra had no actual or implied authority to call or have Vestra's agent call Mr. Charvat on Tomorrow Energy's behalf.

123533429

27.     When Vestra or Vestra's agent allegedly called Mr. Charvat, that conduct was not ratified, approved or even known by Tomorrow Energy.

28.     Vestra's indemnification obligations under the Agreement cover all costs and expenses, including attorney's fees, settlements, and judgments, incurred by Tomorrow Energy with respect to the Charvat Claims.

29.     Mr. Grove's personal guaranty under the Agreement covers Vestra's payment and performance of Vestra's obligations under the Agreement.

30.     Tomorrow Energy has demanded that the Vestra Parties indemnify, defend, and hold harmless Tomorrow Energy for any costs, liability, or damages relating to the Charvat Claims. The Vestra Parties have not responded to Tomorrow Energy's demand.

## FIRST CAUSE OF ACTION

### Breach of Contract, against Vestra

31.     The allegations in Paragraphs 1-30 are incorporated as if set forth herein. Tomorrow Energy also incorporates by reference the contents of the Charvat Claims, without admitting the allegations therein, the truth of which is expressly denied.

32.     The Agreement is a valid contract that exists between Tomorrow Energy and Vestra.

33.     Tomorrow Energy has performed its obligations under the Agreement, except to the extent such performance was excused.

34.     Vestra's error(s), omission(s), misconduct, and/or negligence resulted in Tomorrow Energy being named as a defendant by Mr. Charvat.

35.     Upon information and belief, Vestra or Vestra's agent called Mr. Charvat without Tomorrow Energy's authorization.

36.     Vestra breached the Agreement with Tomorrow Energy by:

     a.     Calling, or having Vestra's agent call, Mr. Charvat;

     b.     Placing a prerecorded call to Mr. Charvat;

     c.     Allegedly violating the TCPA;

d.      Failing to indemnify Tomorrow Energy to the full extent required by the plain terms of the Agreement; and

e.      Failing to provide Tomorrow Energy with insurance coverage for Vestra's negligent acts and/or omissions.

37.     Tomorrow Energy has been damaged and continues to be damaged as a result of the Charvat Claims, including with respect to legal costs and expenses incurred since the filing of the Charvat Claims.

38.     Tomorrow Energy has further been damaged in having to prepare this Crossclaim to enforce Vestra's obligations and preserve Tomorrow Energy's rights pursuant to the Agreement.

39.     Tomorrow Energy will continue to be damaged as it incurs further costs and expenses, including attorney's fees, during the pendency of the Charvat Claims.

40.     Pursuant to the Agreement, Tomorrow Energy is entitled to recover its costs and expenses, including attorney's fees, incurred in defending itself against the Charvat Claims and enforcing Vestra's contractual obligations as set forth herein.

## SECOND CAUSE OF ACTION

### Express Contractual Indemnity and Contribution, against Vestra

41.     The allegations in Paragraphs 1-30 are incorporated as if set forth herein. Tomorrow Energy also incorporates by reference the contents of the Charvat Claims, without admitting the allegations therein, the truth of which is expressly denied.

42.     Pursuant to the Agreement, Vestra agreed to "defend, indemnify and hold the other Party and its affiliates, and their respective officers, directors, Vendors and representatives harmless from and against, and will solely and exclusively bear and pay, any and all claims, suits, losses, penalties, damages and all liabilities and the associated costs and expenses (including attorneys' fees) arising in connection with its breach of obligations under this Agreement, which in the case of [Vestra], shall include, but not be limited to … any claims for any errors, omissions, misconduct, or negligent acts of commission or omission."

123533429

43.     Vestra's breach of the Agreement and Vestra's error(s), omission(s), misconduct, and/or negligence resulted in Tomorrow Energy being named as a defendant with respect to the Charvat Claims.

44.     Tomorrow Energy is not responsible for the damages claimed by Mr. Charvat.  If Tomorrow Energy is found responsible under the law for any of the allegations contained claimed by Mr. Charvat, then the conduct of Vestra caused the actions alleged by Mr. Charvat to happen.

45.     Tomorrow Energy has been damaged and continues to be damaged as a result of the Charvat Claims, including with respect to legal costs and expenses incurred since the filing of the Charvat Claims.

46.     Tomorrow Energy has further been damaged in having to prepare this Crossclaim to enforce Vestra's obligations and preserve Tomorrow Energy's rights pursuant to the Agreement.

47.     Tomorrow Energy will continue to be damaged as it incurs further costs and expenses, including attorney's fees, during the pendency of the Charvat Claims.

48.     Vestra has an express duty and thus Vestra is obligated to defend, indemnify, and hold Tomorrow Energy harmless in an amount equal to Tomorrow Energy's costs and expenses, including attorney's fees, damages, future settlement, and liability in connection with the Charvat Claims.

### **THIRD CAUSE OF ACTION**

**Declaratory Relief, against Vestra**

49.     The allegations in Paragraphs 1-30 are incorporated as if set forth herein. Tomorrow Energy also incorporates by reference the contents of the Charvat Claims, without admitting the allegations therein, the truth of which is expressly denied.

50.     Tomorrow Energy has been damaged and continues to be damaged as a result of the Charvat Claims, including with respect to legal costs and expenses incurred since the filing of the Charvat Claims.

51.     Tomorrow Energy has further been damaged in having to prepare this Crossclaim to enforce Vestra's obligations and preserve Tomorrow Energy's rights pursuant to the Agreement.

123553429

52.     Tomorrow Energy will continue to be damaged as it incurs further costs and expenses, including attorney's fees, during the pendency of the Charvat Claims.

53.     There is a genuine dispute and an actual controversy regarding whether Vestra has a continuing duty to defend and indemnify Tomorrow Energy from the Charvat Claims.

54.     Vestra has an express duty and thus Vestra is obligated to defend, indemnify, and hold Tomorrow Energy harmless in an amount equal to Tomorrow Energy's costs and expenses, including attorney's fees, and liability in connection with the Charvat Claims.

55.     Vestra has failed to defend, indemnify, and hold Tomorrow Energy harmless to the extent provided in the Agreement.

56.     Tomorrow Energy seeks a declaratory judgment that Vestra has a duty to defend, including paying Tomorrow Energy's costs and expenses, including attorney's fees, in connection with the Charvat Claims from their inception.

57.     Tomorrow Energy seeks a declaratory judgment that Vestra has a duty to indemnify Tomorrow Energy for any damages assessed to or liability incurred by Tomorrow Energy in connection with the Charvat Claims.

58.     Tomorrow Energy seeks a declaratory judgment that it has a right to offset its costs and expenses, including attorney's fees, against any amount owed to Vestra pursuant to the Agreement.

## FOURTH CAUSE OF ACTION

### Breach of Personal Guaranty, against Mr. Grove

59.     The allegations in Paragraphs 1-30 are incorporated as if set forth herein. Tomorrow Energy also incorporates by reference the contents of the Charvat Claims, without admitting the allegations therein, the truth of which is expressly denied.

60.     Tomorrow Energy has performed all conditions, covenants, and promises on its part to be performed, to the extent its obligations have not been excused, frustrated, or prevented by the wrongful acts of the Vestra Parties.

61.     Vestra has failed to perform its obligations under the Agreement.

62.     The payment and performance of Vestra's obligations under the Agreement are guaranteed personally by Mr. Grove.

63.     Demand has been made upon Mr. Grove, but Mr. Grove has failed to honor his obligations under the Personal Guaranty and is therefore in breach of that Personal Guaranty.

## FIFTH CAUSE OF ACTION

### Declaratory Relief, against Mr. Grove

64.     The allegations in Paragraphs 1-30 are incorporated as if set forth herein. Tomorrow Energy also incorporates by reference the contents of the Charvat Claims, without admitting the allegations therein, the truth of which is expressly denied.

65.     Tomorrow Energy has been damaged and continues to be damaged as a result of the Charvat Claims, including with respect to legal costs and expenses incurred since the filing of the Charvat Claims.

66.     Tomorrow Energy has further been damaged in having to prepare this Crossclaim to enforce Mr. Grove's obligations and preserve Tomorrow Energy's rights pursuant to the Personal Guaranty in the Agreement.

67.     Tomorrow Energy will continue to be damaged as it incurs further costs and expenses, including attorney's fees, during the pendency of the Charvat Claims.

68.     There is a genuine dispute and an actual controversy regarding whether Mr. Grove has a continuing duty to guarantee Vestra's defense and indemnity of Tomorrow Energy from the Charvat Claims.

69.     Mr. Grove has an express duty to guarantee payment and performance of Vestra's duty to defend, indemnify, and hold Tomorrow Energy harmless in an amount equal to Tomorrow Energy's costs and expenses, including attorney's fees, and liability in connection with the Charvat Claims.

70.     Mr. Grove has failed to guarantee payment and performance of Vestra's duty to defend, indemnify, and hold Tomorrow Energy harmless to the extent provided in the Agreement.

71.     Tomorrow Energy seeks a declaratory judgment that Mr. Grove has a duty guarantee payment and performance of Vestra's duty to defend, including paying Tomorrow Energy's costs and expenses, including attorney's fees, in connection with the Charvat Claims from their inception.

72.     Tomorrow Energy seeks a declaratory judgment that Mr. Grove has a duty to guarantee Vestra's payment to Tomorrow Energy of any damages assessed to or liability incurred by Tomorrow Energy in connection with the Charvat Claims.

<u>**PRAYER FOR RELIEF**</u>

73.     WHEREFORE, Tomorrow Energy prays for the following relief against the Vestra Parties, as follows:

a.      For compensatory damages including Tomorrow Energy's costs and expenses, including attorney's fees, in connection with or arising out of the Charvat Claims, at an amount according to proof;

b.      For total and complete indemnity for any damages and liabilities assessed to Tomorrow Energy in connection with the Charvat Claims;

c.      For pre-judgment interest and post-judgment interest at the legal rate;

d.      For a declaratory judgment stating that:

i.      Vestra has a duty to defend Tomorrow Energy in connection with the Charvat Claims, including paying Tomorrow Energy's costs and expenses, including attorney's fees;

ii.      Vestra has a duty to indemnify Tomorrow Energy for any damages assessed to or liability incurred by Tomorrow Energy in connection with the Charvat Claims;

iii.      Tomorrow Energy has a right to offset its costs and expenses, including attorney's fees, against any amount owed to Vestra pursuant to the Agreement; and

iv.      Mr. Grove has a duty to guarantee and satisfy Vestra's payment and performance, including Vestra's duty to defend Tomorrow Energy in connection with the Charvat Claims, including paying Tomorrow Energy's costs and expenses, including attorney's fees, and

123533429

including Vestra's duty to indemnify Tomorrow Energy for any damages assessed to or liability incurred by Tomorrow Energy in connection with the Charvat Claims; and

e.   For such other and further relief as is just and proper.


DATED:  July 15, 2020                    BLANK ROME LLP


By:  /s/ Harrison Brown
         David Oberly
         doberly@blankrome.com
         1700 PNC Center
         201 East Fifth Street
         Cincinnati, OH 45202
         Telephone:513.362.8700
         Facsimile: 513.362.8787

         Ana Tagvoryan (admitted *pro hac vice*)
         atagvoryam@blankrome.com
         Harrison Brown (admitted *pro hac vice*)
         hbrown@blankrome.com
         2029 Century Park East, 6th Floor
         Los Angeles, CA 90067
         Telephone:424.239.3400
         Facsimile: 424.239.3434

      Attorneys for
      TOMORROW ENERGY CORP.

123533429

# EXHIBIT A

# Master Tele-Sales Agreement

This Master Tele-Sales Agreement ("Agreement") is made and entered into this 20th day of March 2019, by and between Tomorrow Energy Corp whose business address is 3010 Briarpark Drive, Suite 200, Houston, Texas 77052 ("Tomorrow Energy") and Vestra Energy, INC, whose business address is 412 N Main St Ste 100  Buffalo, NY 82834 ("Vendor").

**Defined Terms**:

**"Affiliate"** of a Party means any person or entity controlled by, that controls, or that is under common control with, such Party. The term "control" (including the terms "controlling", "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of a Party, whether through the ownership of voting securities, by contract, or otherwise.

"**Confidential Information**" means all information or material not generally known by non-Tomorrow Energy (including its Affiliates) personnel (a) which gives Tomorrow Energy some competitive business advantage or the opportunity of obtaining such advantage, or the disclosure of which could be detrimental to the interests of Tomorrow Energy; (b) which is owned, controlled or developed by Tomorrow Energy or in which Tomorrow Energy has an interest; and (c) which is (i) marked "Confidential Information," "Proprietary Information" or other similar marking, (ii) known by Vendor to be considered confidential and proprietary by Tomorrow Energy, or (iii) from all the relevant circumstances should reasonably be assumed by Vendor to be confidential and proprietary to Tomorrow Energy.  Confidential Information includes, but is not limited to, the following types of information and other information of a similar nature (whether or not reduced to writing): Prospect Data, the terms of this Agreement and any related Schedule(s) or resulting Customer Agreements (including pricing offered by Tomorrow Energy to any Prospect or Compensation payable by Tomorrow Energy to Vendor under any Schedule), trade secrets, inventions, drawings, file data, documentation, diagrams, specifications, know-how, processes, formulas, models, flow charts, software in various stages of development, source codes, object codes, research and development procedures, research or development and test results, marketing techniques and materials, marketing and development plans, price lists, pricing policies or models, business plans, information relating to current, former or prospective customers and/or suppliers' identities, characteristics and agreements, financial information and projections, and employee files and information.  Confidential Information also includes any information described above which Tomorrow Energy obtains from a third party and which Tomorrow Energy treats as proprietary or designates as Confidential Information, whether or not owned or developed by Tomorrow Energy.  Notwithstanding the above, however, no information constitutes Confidential Information which Vendor can demonstrate by documentary evidence (A) is generic information or general knowledge, or if it is otherwise publicly known and in the public domain; (B) after being disclosed, entered into the public domain without any action or fault of Vendor or its personnel or vendors; (C) is obtained from any individual, firm or entity which had the unrestricted right to disclose it; or (D) is disclosed by Vendor with Tomorrow Energy prior written approval.

**"Customer"** means a Prospect that has executed a Customer Agreement.

1

**"Customer Agreement"** means any written agreement executed by Tomorrow Energy and a Prospect, in which Vendor was instrumental in consummating the transaction.

**"Drop Request"** means that a customer has initiated the process of dropping service with Tomorrow Energy either directly through Tomorrow Energy, through their respective utility, or by enrolling for service with another supplier.

**"Enrollment"** means that the utility has confirmed the validity and eligibility of a specific account for service with Tomorrow Energy and has set a Service Start Date for the customer to begin flowinNew Wave Power from Tomorrow Energy.

**"Prospect"** means an entity eligible to select a retail electricity supplier and submitted to Tomorrow Energy by Vendor, along with the requisite Prospect Data, for Tomorrow Energy consideration.

**1. Term:** This Agreement will become effective on the date stated above and will continue in effect until terminated by either party.

**2. Services:** Vendor agrees to solicit new prospective customers for Tomorrow Energy (each a "Prospect", and in plural, "Prospects"). A Prospect that is successfully enrolled in the relevant utility direct access program listed in Schedule A and accepted as a Tomorrow Energy Customer (a "Customer") will be eligible for compensation to Vendor as described in Section 5 and Schedule A. Vendor acts as the representative for customers that buy retail electric and related services. During the term of the Agreement, if the Vendor elects to present one of its customers to Tomorrow Energy for purposes of evaluating the purchase of retail electricity and related services from Tomorrow Energy, then Vendor shall provide Tomorrow Energy with written information including but not limited to, the information designated in the Schedule, as applicable (collectively, "Prospect Data"). Tomorrow Energy is in the business of selling electricity, gas and related services to residential and commercial customers. Tomorrow Energy will review the Prospect Data, as well as any other information Tomorrow Energy may collect independently and make a determination, in Tomorrow Energy sole judgment, as to whether a Prospect is qualified to receive a proposal from Tomorrow Energy. Except with respect to an executed Schedule, Vendor acknowledges and agrees that (a) Tomorrow Energy reserves the right to reject a Prospect for any reason, or for no reason, in its sole discretion, and (b) in no event shall Tomorrow Energy be liable to Vendor for any loss suffered by Vendor for Tomorrow Energy failure to execute a Customer Agreement with a Prospect.

**3. Performance:** Vendor acknowledges and agrees that (a) this Agreement does not give any right, exclusive or otherwise, to Vendor to sell or represent to a Prospect that it has the ability to sell the products and services of Tomorrow Energy; and (b) Tomorrow Energy may sell its products and services through its direct sales force, in connection with other independent Vendors or through any other means Tomorrow Energy deems appropriate. All trademarks and service marks, logos, trade names, copyrights associated with any of Tomorrow Energy marketing materials, and all associated goodwill, shall remain the property of Tomorrow Energy, and all extension of goodwill created by Vendor shall inure to the benefit of Tomorrow Energy. The method (so long as same is legal, commercially reasonable and ethical), details, and means of performing the services referenced in Section 2 above, shall be exclusively and

solely determined by Vendor. Vendor may at its expense, employ such assistants and outside contractors as Vendor deems necessary to perform the services referenced in Section 2. Except for those requirements outlined in Section 7 hereof, Tomorrow Energy will respect Vendor's autonomy and will not attempt to control, direct, or supervise Vendor's (or its Vendors) activities in any manner.

**4. Relationship and Mutual Representations and Warranties:** The parties agree that the relationship of Vendor to Tomorrow Energy shall be that of an independent contractor. All parties recognize that this Agreement is non-exclusive and in keeping with an 'arm's length' relationship. Without Tomorrow Energy prior written consent, Vendor shall have no authority to bind Tomorrow Energy in any manner whatsoever. Vendor, its employees, Vendor's Vendors, and their employees shall not be considered employees of Tomorrow Energy in any way, or for any purpose.

Nothing contained herein or in any Schedule shall be construed as creating a relationship of employer and employee or principal and Vendor between them. Accordingly, Vendor is not entitled to any benefits accorded to Tomorrow Energy employees, including, without limitation, workers' compensation, disability insurance, vacation or sick leave. Vendor shall not have any authority to execute Customer Agreements or other legally binding documents on behalf of Tomorrow Energy and shall not hold itself out as having such authority to act as an employee, Vendor or officer of Tomorrow Energy. Vendor shall not incur, assume, agree to pay on behalf of Tomorrow Energy or otherwise commit Tomorrow Energy to any contractual agreement or obligation, or any charge, fee or expense. Nothing in the Agreement will be construed to constitute a joint venture, fiduciary relationship, partnership or other joint undertaking. Vendor acknowledges and agrees that in referring Prospects to Tomorrow Energy hereunder it is acting on behalf of such Prospects and does not represent Tomorrow Energy.

**5. Mutual Representations and Warranties**. Each Party warrants and represents to the other the following: (a) it is duly organized, validly operating and in good standing under the laws of the jurisdiction of its formation; (b) it is authorized and qualified to do business in the jurisdictions necessary to perform under the Agreement; (c) the execution, delivery and performance of the Agreement are duly authorized and do not violate any governing documents, contracts to which it is a party or applicable Law; and (d) there is no material event(s) or other agreement(s) which would impair that Party's right, authority or ability to execute the Agreement and otherwise consummate the transactions contemplated by the Agreement, or which would represent any conflict of interest with the Vendor, any Prospect or Tomorrow Energy.

Vendor warrants, represents and covenants, as of the Effective Date and the date of execution of the Schedule and Customer Agreement with one of Vendor's Prospects, that: (a) Vendor has any and all licenses, permits and approvals required under applicable Law to perform the services set forth herein; (b) Vendor is authorized to act on behalf of Prospects that Vendor submits to Tomorrow Energy, Vendor has no authority to act on behalf of Tomorrow Energy, and Vendor is not authorized to and shall not alter or modify in any way any Customer Agreements, or any sales, marketing, or pricing materials provided by Tomorrow Energy to Vendor for the benefit of Prospects;(c) Vendor will use its skills and abilities and perform its duties hereunder in a professional and conscientious manner in accordance with all applicable law and standards, and will not make any oral or written representations or promises or

statements which conflict with the terms of a Customer Agreement entered into with a Prospect; (d) there are no pending, or to the knowledge of Vendor, threatened, investigations, actions or judgments against Vendor, whether criminal or civil and (i) involving matters of fraud or moral integrity, or (ii) constituting a felony; (e) Vendor shall bear all of its own business expenses in performance of the services under the Agreement.; (f) Vendor is responsible for paying any and all taxes incurred as a result of Vendor's compensation or otherwise providing services under the Agreement through its employees or permitted subcontractors, including estimated taxes, FICA, and other employment or consulting taxes or obligations; (g) Vendor shall disclose to all Prospects that Tomorrow Energy shall pay a fee to Vendor for Vendor's referral of the Prospect to Tomorrow Energy**,** and (h) Vendor shall hold harmless, as well as defend and indemnify, Tomorrow Energy for any damages, losses or costs of any kind incurred by Tomorrow Energy associated with a breach of the representations set forth in this Section 4.  The provisions of this clause shall survive the expiration or termination of the Agreement for any reason.

**6. Compensation:** Vendor shall not have any right to any fee, commission, compensation or other amount from Tomorrow Energy unless and until Tomorrow Energy has executed and delivered a Schedule that is satisfactory to Tomorrow Energy and the Vendor has fulfilled all other requirements entitling it to be paid compensation under the Agreement.  Tomorrow Energy agrees to pay to Vendor on or before the payment date the Compensation amounts set forth in the Schedule, for the initial term of any Customer Agreement(s) executed thereunder. Upon termination of a Customer Agreement for any reason, Tomorrow Energy obligation to remit Compensation to Vendor under the Agreement will also terminate.  If in the future Tomorrow Energy enters into a new Customer Agreement with that Customer, no amounts shall be payable to Vendor unless Tomorrow Energy and Vendor shall have entered into a new Schedule covering that Customer.  Except for the compensation expressly payable to Vendor under the Schedule, no other amounts are payable to Vendor, and nothing in the Agreement imposes a duty on Tomorrow Energy with respect to any Customer Agreements, including any duty on Tomorrow Energy to collect amounts unpaid by Customer.

Tomorrow Energy will pay to Vendor for all Prospects who utilize Tomorrow Energy services as a Customer.  The commission paid will be according to any active Schedule made part of this Agreement by signature of both Parties.

Tomorrow Energy will provide to Vendor a weekly accounting and weekly payment via wire or ACH within 10 days of the conclusion of each week.  Such payment will include Vendor's commission for each Tomorrow Energy/Customer transaction successfully concluded during the preceding week.

Vendor agrees that they will not re-solicit a referred Prospect that becomes a Tomorrow Energy Customer during the initial term of the Customer's contract with Tomorrow Energy and any subsequent renewal terms.

**7. Clawback Policy.**  Vendor agrees that compensation is only earned if Customer stays enrolled with Tomorrow Energy for a minimum of thirty (30) days after the energy flow has commenced ("Clawback Period").  The period of actual enrollment will be measured from the date of sale has commenced to the date upon which Tomorrow Energy receives a drop request. In the event that a Customer stays with Tomorrow Energy less than the entire Clawback Period, Tomorrow Energy will have the option to: (a) Deduct the commission paid for such

customer out of any outstanding commission payment. (b) Otherwise recover amounts already paid from Vendor. With respect to the foregoing, Vendor agrees and consents to Tomorrow Energy application, implementation and enforcement of this Clawback Policy and expressly agrees that Tomorrow Energy may take such actions as are necessary to effectuate the Clawback Policy (as applicable to Vendor) or assert its rights applicable law, including set-off, recoupment, rescission, cancellation, or stoppage of payment, all without further consent or action being required by Vendor.

**8. Vendor's Obligations:** Without interference from Tomorrow Energy, Vendor will solely determine what amount of time Vendor devotes to the performance of the above described services. Vendor represents and warrants that:

Vendor shall conduct its business, as it relates to the services defined herein, in a commercially reasonable, legal and ethical manner. Every effort will be made by Vendor to ensure that the Customer is aware of the economic substance of those transactions contemplated herein, and that Vendor's affairs with Customer have been conducted in a professional manner.

Vendor shall be fully knowledgeable about all federal, state and local legal and regulatory requirements related to its activities and shall comply with all such requirements including but not limited to: (1) licensing, (2) registration, (3) switching a retail end user's account, (4) sales, marketing and telemarketing activities and (5) telemarketing rules and regulations related to do-not-call lists. Vendor shall be solely liable for any failure to comply or alleged violations of these requirements

Vendor agrees in the event a consumer advises Vendor that he or she does not wish to receive a telephone call made by or on behalf of Tomorrow Energy, Vendor shall immediately place that consumer on Tomorrow Energy and Vendor's internal do-not-call lists, refrain from any future calls to that number and advise Tomorrow Energy accordingly.

Vendor agrees if Vendor initiates telephone solicitation calls from outside the geographical boundaries of Pennsylvania, Vendor shall not utilize any technology which allows the telephone solicitation call to appear on the consumer's caller identification system as a call being made from within a Pennsylvania area code.

Vendor shall purchase state and federal do-not-call lists on a quarterly basis and remove from campaign lists those consumers on the state and/or federal call lists.

Vendor shall maintain any and all insurance applicable to the performance of its obligations hereunder as required by Law, including workers' compensation, health and disability insurance. Vendor agrees to provide worker's compensation insurance for Vendor, Vendor's employees and Vendors (if required by applicable law), and Vendor agrees to hold harmless and indemnify Tomorrow Energy from any and all claims arising out of any injury, disability, or death of Vendor, Vendor's employees and Vendors.

Vendor agrees to maintain a policy of comprehensive general liability insurance to cover any negligent acts committed by Vendor, or Vendor's employees or Vendors during the performance of any duties under this Agreement. Vendor shall have Tomorrow Energy named an "Additional Insured" on such policy. Vendor further agrees to hold Tomorrow Energy free and harmless from any and all claims arising from any such negligent act or omission.

Vendor agrees that should Tomorrow Energy incur any expense relating to actual damages or its defense from same as a result of a breach of any of Vendor's representations or warranties, then Tomorrow Energy may invoke a right of offset against future Vendor commissions until such deficit has been repaid.

Vendor will treat all correspondence from Tomorrow Energy including Tomorrow Energy contractual documentation with Customer(s) as confidential and will only disclose same to third parties after receiving written permission from Tomorrow Energy.

**9. Performance Improvement Plan Program:** Vendor agrees that Tomorrow Energy, in its sole discretion, may place Vendor on a Performance Improvement Plan Program ("PIPP") if Vendor fails to meet or achieve performance metrics established by Tomorrow Energy. The duration and elements of the PIPP shall be solely determined by Tomorrow Energy as warranted by the circumstances. In the event Vendor is operating under a PIPP, Vendor agrees that Tomorrow Energy may withhold all or any part of any compensation due Vendor, as credit support in relation to amounts Vendor may owe Tomorrow Energy in relation to Tomorrow Energy Clawback Policy or otherwise. Upon successful completion of the PIPP, Tomorrow Energy will return such withheld money. In the event of termination of this Agreement, such withheld money shall be returned to Vendor, subject to the terms of Section 13 and any other terms of this Agreement.

**10. Online Terms and Conditions:** In the event Tomorrow Energy creates specific online policies, procedures, terms and conditions and/or agreements for, or related to, Vendors, Tomorrow Energy reserves its right to make any unilateral changes or modifications at any time without prior notice to Vendor, and such changes or modifications shall apply prospectively to Vendor.

**11. Outside Quality Control Inspection:** Vendor authorizes Tomorrow Energy to retain or appoint any third-party to conduct a quality control inspection of Vendor's call-center operations, facility, training, and all other activities related to Vendor's transactions with Tomorrow Energy, at Tomorrow Energy sole discretion. Such an inspection shall include, but not be limited to, analyzing data quality, documenting opportunities for improvement, and determining ways to eliminate gaps between current and desired levels of performance, and may include in-person observation of telemarketing activities, review of taped conversations, and review of Vendor's records.

**12. Background Check Authorization:** Vendor hereby authorizes Tomorrow Energy to, at any time or times, investigate Vendor's background, qualifications and creditworthiness for purposes of evaluating whether Vendor is qualified for the Vendor position, in Tomorrow Energy sole discretion. Vendor understands that Tomorrow Energy may utilize an outside firm or firms to assist it in checking such information, and Vendor specifically authorizes such an investigation by information services and outside entities of Tomorrow Energy choice. Employee background checks and related drug testing shall be at the direction of Tomorrow Energy. Vendor shall pay 50% of all costs associated with Employee background checks and 100% of all costs associated with drug testing. The Vendors portion shall be deducted from current commission payment.

**13.  Termination:**  Notwithstanding anything herein to the contrary, either party may terminate this Agreement at any time; however, Tomorrow Energy obligation to pay Vendor as indicated in Section 6 above shall continue, subject to the Clawback Policy and offset of any amounts owed Tomorrow Energy by Vendor, and all of the other terms of this Agreement.  Any such termination shall have no effect upon those commitments made by the signatories hereto evidenced by previously executed Schedules.  In the event this Agreement is terminated, Vendor authorizes Tomorrow Energy to hold up to 50% of previous and/or scheduled payments, or amounts withheld in relation to a PIPP, for up to forty-five (45) days, during which time Tomorrow Energy may offset against such amounts against any amounts owed to Tomorrow Energy by Vendor.

**14.  Personal Guaranty:**  The undersigned unconditionally and irrevocably guaranties to Tomorrow Energy the full and timely payment and performance when due of all obligations herein, and any costs of enforcement with respect to the same (the "Guaranteed Obligations"). This Guaranty is a guaranty of payment and performance and not of collectability.  Guarantor's obligations under this Guaranty are independent of those of the undersigned or any other person.  Tomorrow Energy may bring one or more separate actions against Guarantor without proceeding against the individual or any other person or any security, and without pursuing any other remedy.  Tomorrow Energy rights under this Guaranty shall not be exhausted by any action of Tomorrow Energy until all of the Guaranteed Obligations have been indefeasibly paid and performed in full.

**15. Materials**: Tomorrow Energy shall provide marketing information including, but not limited to, price offerings, promotional literature, and target customer segments as may be reasonably necessary to assist Vendor. All start-up costs, including but not limited to: mass market surveys both residential and commercial; industry regional competition research, data compilation and analysis; telephone lines and equipment; presentation and verification script writing; sales and customer service tools development; and payroll, will be borne by Vendor.

**16.  Call Lead List**:  Vendor agrees to fully disclose and provide to Tomorrow Energy any and all listings or lists on any Vendor-targeted business prospect.  Vendor authorizes Tomorrow Energy to review, modify, copy and/or scrub such lists that Vendor has purchased, received or developed.  Vendor is responsible for scrubbing all lists against federal and state" Do Not Call Lists". Further, it is agreed by the parties hereto that all copies of all correspondence, written plans, listing information, sales manuals and sales aids, memoranda, files, reports, legal opinions, accounting information and any and all other records of or relating to transactions handled by Vendor and/or by Vendor's Vendor on behalf of Tomorrow Energy, shall be and remain the separate and exclusive property of Tomorrow Energy unless otherwise agreed to in writing by the parties hereto.  In the event this agreement is terminated, Vendor agrees to immediately transfer all such materials to Tomorrow Energy.

**17. Verification:** Vendor shall complete a valid third-party verification for every customer submitted as a sale to Tomorrow Energy in order to be considered for compensation. Tomorrow Energy will utilize the verification company of their choice for this process.


**18. Limitation on Use of Customer Information**: For a period of three (3) years following the initial term of an enrolled customer, Vendor shall not directly or indirectly, Enroll

Tomorrow Energy customers in a like kind commodity for anyone other than Tomorrow Energy or its affiliates.

**19. Compliance with Applicable Requirements:** Vendor shall comply with any and all federal, state or local laws, rules, and regulations or any other governmental or quasi-governmental rules and regulations as well as any host utility requirements in regard to the conduct of Services rendered pursuant to this Agreement.

**20. Confidentiality**: During the term of this agreement, Vendor will have access to Tomorrow Energy's Confidential Information, which could include, but not be limited to, customer accounts, prices and product information, marketing plans, business strategies and finances, technical systems and networks, and activities (collectively, "Confidential Information," as defined herein) all of which are proprietary to Tomorrow Energy. During the term of this Agreement and thereafter, Vendor agrees to keep strictly confidential any information obtained from Tomorrow Energy and shall limit the access and disclosure of such information to its employees, representatives and affiliates who have a substantial need for such information in connection with the Services provided herein.

**21. Indemnities:** Each Party shall defend, indemnify and hold the other Party and its affiliates, and their respective officers, directors, Vendors and representatives harmless from and against, and will solely and exclusively bear and pay, any and all claims, suits, losses, penalties, damages and all liabilities and the associated costs and expenses (including attorneys' fees) arising in connection with its breach of obligations under this Agreement, which in the case of Vendor, shall include, but not be limited to, those incurred as a result of Vendor or its employees or Vendors use of unapproved literature, or representations, whether written or verbal, to customers or potential customers, as well as for any claims for any errors, omissions, misconduct, or negligent acts of commission or omission.

**22.  Entire Agreement:**   This Agreement (which constitutes the Agreement and any Schedule(s) executed and delivered by the Parties from time to time) supersedes any and all agreements, either oral or written, between the parties hereto with respect to the rendering of services by Vendor to Tomorrow Energy, contains all of the agreements between the parties with respect to the rendering of such service, and governs any Schedules subsequently entered into between Tomorrow Energy and Vendor.  Both parties agree that no representations, inducements, promises, or agreements (oral or otherwise) have been made by any party or anyone acting on behalf of any party, which are not embodied herein; and that no other agreement, statement, or promise not contained herein shall be valid or binding.  Any modification of this Agreement will be effective only if it is in writing and signed by both parties.  Should there be a conflict between the terms and conditions expressed herein and any Schedule(s) relating to this Agreement, then the Master Agreement prevail.

**23.  Schedules:**  Vendor and Tomorrow Energy will execute Schedules (governed by this Agreement) to evidence their agreement on specific Customers referred by Vendor to Tomorrow Energy.  Such Schedules will memorialize the terms of commission, account exclusivity, etc.  The Schedule(s) will serve as Vendor's proof (or receipt) of Tomorrow Energy obligation to commission Vendor as defined in this Agreement for specifically referred Customers.  Vendor agrees that to perfect its interest in a commission stream for a referred Customer, it must possess a validly executed Schedule from Tomorrow Energy.

**24. Choice of Law/Jurisdiction/Venue:** This Agreement shall be governed by the laws of the State of Nevada without giving effect to the conflicts of laws principles thereof. If any dispute arises relating to this Agreement, such dispute shall be heard solely and exclusively in The District Court of Nevada, For and In Clark County, and the Parties submit to this exclusive jurisdiction and venue, and hereby waive any objection thereto.

**25. Competitive Activity ; Non-Solicitation; Non-Disparagement**. During the term of the Agreement and for twelve months after the expiration or termination of the Agreement for any reason, Vendor shall not solicit, or assist any other person or commercial entity to solicit, or request or advise any existing Tomorrow Energy customer to breach its agreement with Tomorrow Energy, or otherwise to withdraw, curtail or terminate early its business dealings with Tomorrow Energy. During the term of the Agreement and for one year after the expiration or termination of the Agreement, Vendor shall not solicit, or assist any other person to solicit, or request or advise any existing employee of Tomorrow Energy or its Affiliates to terminate employment with Tomorrow Energy or its Affiliates. Upon termination or expiration of the Agreement for any reason, Vendor shall refrain from disparaging Tomorrow Energy and its Affiliates, or any of their respective officers, directors, or shareholders. Vendor acknowledges that any breach of this Section 25 will cause irreparable harm to Tomorrow Energy for which money damages would not adequately compensate Tomorrow Energy. Accordingly, in addition to all other remedies expressly provided in the Agreement, Vendor agrees that Tomorrow Energy shall be entitled to all available remedies at equity (including without limitation, the pursuit of injunctive relief and without the necessity of posting a bond or similar surety in pursuing such relief) and in law. The provisions of this Section 25 shall survive the expiration or termination of the Agreement for any reason.

**26. Customer Agreements**. Any transaction between Tomorrow Energy and a Prospect and/or Customer shall be formed by the method described in the attached Schedule. It is specifically recognized and agreed that Tomorrow Energy, in its sole discretion, may from time to time, change the form as well as the terms and conditions under which it will enter into a Customer Agreement, and nothing herein shall be deemed to prohibit a Customer and Tomorrow Energy from agreeing to terminate a Customer Agreement early. Further, all terms and conditions of the Customer Agreement are subject to Tomorrow Energy approval and Vendor will not directly or indirectly represent or imply otherwise to a Prospect and/or Customer. Tomorrow Energy is responsible for evaluating, approving or denying each Prospect's credit. Tomorrow Energy shall have the sole right to elect not to serve a Prospect or to exercise the termination rights under any Customer Agreement for any reason permitted under the Customer Agreement. Upon termination of a Customer Agreement for any reason, Tomorrow Energy obligation to remit Compensation to Vendor under the Agreement will also terminate, and Customer shall no longer be designated in the prospect register as a Prospect of Vendor. Further, if a Customer should default in making payments to Tomorrow Energy under its Customer Agreement and Tomorrow Energy has already paid the Compensation to Vendor for the default period, Tomorrow Energy has the right to either (a) deduct that amount previously paid from the total amount due to Vendor in a subsequent period; or (b) invoice Vendor for such amounts, payable on demand.

**27. Limitation of Liability**. Notwithstanding any other provision of the Agreement to the contrary, (i) the entire liability of Tomorrow Energy for any and all claims of any kind arising from or relating to the Agreement will not exceed the full amount due to Vendor under the Schedule(s) then in effect and (ii) the entire liability of Tomorrow Energy for any and all claims

arising from or relating to the Agreement will be limited to direct actual damages only, subject in all cases to an affirmative obligation on the part of Vendor to mitigate its damages. Furthermore, Tomorrow Energy shall not have any liability to Vendor whatsoever under this Agreement or at law, in equity or otherwise, including under theories of quantum merit or unjust enrichment, unless and until the Parties shall have mutually executed and delivered Schedule that remain in effect.  NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY SPECIAL, INDIRECT, INCIDENTAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES OF ANY CHARACTER, IRRESPECTIVE OF WHETHER CLAIMS OR ACTIONS FOR SUCH DAMAGES ARE BASED UPON CONTRACT, WARRANTY, NEGLIGENCE, STRICT LIABILITY OR ANY OTHER REMEDY AT LAW OR EQUITY.  The provisions of this Section 27 shall survive the expiration or termination of the Agreement for any reason.

**28.  No Third-Party Beneficiaries**.  The Agreement is for the sole and exclusive benefit of the Parties hereto, and no third party will have any rights under the Agreement whatsoever, If Vendor is represented by a third party in connection with the procurement of the Agreement or if Vendor employs any third party in connection with its performance hereunder, Vendor shall (a) obtain prior written consent from Tomorrow Energy for such engagement(s) or representation(s), (b) be fully responsible for any fee, commission or other Compensation owing any such third party, (c) arrange for payment of such third party without involving Tomorrow Energy, and (d) indemnify, defend and hold Tomorrow Energy harmless from any and all claims for compensation by any such third party.   The provisions of this Section 28 shall survive the expiration or termination of the Agreement for any reason.

**29.   Assignment**.   Vendor shall not assign any of its rights and obligations under this Agreement or the Schedule(s) without the prior written consent of Tomorrow Energy, which it may withhold in its sole discretion.  Tomorrow Energy may assign and be released from any of its rights and obligations under this Agreement or the Compensation Schedule(s) without consent to an Affiliate or to any person or entity succeeding to all or substantially all of Tomorrow Energy assets or business or the division or region of Tomorrow Energy to which the Agreement relates or into which Tomorrow Energy is merged or otherwise combined or reorganized; provided the succeeding entity agrees to be bound to this Agreement.

**30.  Waiver and Severability.**  Failure to provide notice of, or object to, any default under this Agreement will not operate or be construed as a waiver of any future default, whether like or different in character.  If any portion of this Agreement or application thereof to any person or circumstance, is held legally invalid, the remainder will not be affected and will be valid and enforced to the fullest extent permitted by law and equity.

**31.   Notices.**  To be effective, all notices must be in writing delivered by hand, by first class mail, postage prepaid, by electronic facsimile transmission (with verification of delivery), or by express carrier to the addresses provided in this Agreement.  A Party may change its address by providing notice of such change in accordance herewith.

**32.   Affirmation.** Vendor affirms that it has read this Agreement in its entirety and it agrees to the terms and conditions contained herein.

**33. Acceptance**. *This Agreement and the Compensation Schedule shall not be binding or enforceable against Tomorrow Energy unless and until signed by an authorized representative of Tomorrow Energy.*

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their duly authorized representatives effective as the Effective Date.

Executed the day and year first above written by:

Tomorrow Energy Corp.  **Vendor:** Vestra Energy, INC

**By:** _____  **By:** _____

**Name: Paul Keene**  **Name:** _Sean Grove_____

**Title: Chief Executive Officer**  **Title:** _President_____

Address for Notices:  Address for Notices:

3010 Briarpark Drive, Suite 200  412 N Main St Ste 100
Houston Texas, 77052  Buffalo, NY 82834

11