# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| PHILIP CHARVAT, individually and on behalf of a class of all persons and entities similarly situated,<br><br>                Plaintiffs,<br><br>    vs.<br><br>TOMORROW ENERGY CORP., f/k/a SPERIAN ENERGY CORP., VESTRA ENERGY, INC., and SEAN GROVE,<br><br>                Defendants. | Case No. 2:20-cv-01064-ALM-KAJ<br><br>Chief Judge Algenon L. Marbley<br><br>Magistrate Judge Kimberly A. Jolson |
| TOMORROW ENERGY CORP., a Nevada corporation,<br><br>                Crossclaimant,<br><br>    vs.<br><br>VESTRA ENERGY, INC., a Wyoming corporation, and SEAN GROVE, an individual,<br><br>                Cross-Defendants. | |

## TOMORROW ENERGY CORP.'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO PHILIP CHARVAT'S FIRST AMENDED CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, MOTION TO DISMISS PHILIP CHARVAT'S FIRST AMENDED CLASS ACTION COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Federal Rule of Civil Procedure 12(c), Tomorrow Energy Corp. ("Tomorrow Energy") by and through its undersigned counsel, hereby moves this Court for judgment on the pleadings as to the First Amended Class Action Complaint (Dkt. No. 23 (the "First Amended Complaint" or the "FAC")) of Philip Charvat ("Mr. Charvat") against Tomorrow Energy. Alternatively, pursuant to Federal Rule of Civil Procedure 12(b)(1), Tomorrow Energy moves this Court for an order dismissing Mr. Charvat's First Amended Complaint for lack of subject matter jurisdiction. A supporting memorandum is attached.

DATED: November 5, 2020      BLANK ROME LLP

        By: /s/ David J. Oberly
           David Oberly
           doberly@blankrome.com
           1700 PNC Center
           201 East Fifth Street
           Cincinnati, OH 45202
           Telephone:513.362.8700
           Facsimile: 513.362.8787

           Ana Tagvoryan (admitted *pro hac vice*)
           atagvoryan@blankrome.com
           Harrison Brown (admitted *pro hac vice*)
           hbrown@blankrome.com
           2029 Century Park East, 6th Floor
           Los Angeles, CA 90067
           Telephone:424.239.3400
           Facsimile: 424.239.3434

           Attorneys for
           TOMORROW ENERGY CORP.

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION. ...................................................................................................7

II.    MR. CHARVAT'S ALLEGATIONS. ..................................................................8

III.    LEGAL STANDARDS. ........................................................................................9

    A.    Judgment on the Pleadings.........................................................................9

    B.    Lack of Subject Matter Jurisdiction.........................................................10

IV.    RELEVANT LAW. .............................................................................................11

    A.    The Government-Debt Exception to the TCPA........................................11

    B.    Barr v. Am. Ass'n of Political Consultants, Inc. ....................................13

    C.    The Supreme Court's Finding That the Government-Debt Exception Is Unconstitutional Extends to Subsection (b)(1)(B)..................................15

V.    ARGUMENT. .....................................................................................................17

    A.    Barr Dictates that Mr. Charvat's Claims Are Void as a Matter of Law. ...............17

    B.    The Dicta in Footnote 12 of Barr Does Not Change the Result. ...........................20

VI.    CONCLUSION....................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*,
  923 F.3d 159 (4th Cir. 2019) .........................................................................13, 14

*Am. Ass'n of Political Consultants v. Sessions*,
  323 F. Supp. 3d 737 (E.D.N.C. 2018)......................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................9

*Barr v. Am. Ass'n of Political Consultants, Inc.*,
  --- U.S. ----, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020)..............................*passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................9

*Bradley v. Sch. Bd. of City of Richmond*,
  416 U.S. 696 (1974)..................................................................................................21

*Creasy v. Charter Commc'ns, Inc.*,
  --- F. Supp. 3d ----, 2020 WL 5761117 (E.D. La. Sept. 28, 2020) ................*passim*

*Ex parte Siebold*,
  100 U.S. 371 (1880)............................................................................................11, 17

*Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*,
  491 F. App'x 628 (6th Cir. 2012) ...............................................................................9

*Foster v. Health Recovery Servs., Inc.*,
  No. 19-4453, 2020 WL 5943021 (S.D. Ohio Oct. 7, 2020).....................................10

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)..................................................................................................18

*James B. Beam Distilling Co. v. Georgia*,
  501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991)..........................................21

*LaGuardia v. Designer Brands Inc.*,
  No. 20-2311, 2020 WL 6280910 (S.D. Ohio Oct. 27, 2020)....................................10

*Leonard v. Robinson*,
  477 F.3d 347 (6th Cir. 2007) ...................................................................................18

*Lindenbaum v. Realgy, LLC*,
   No. 19-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) ................................17, 20, 21, 22

*Lindsay v. Yates*,
   498 F.3d 434 (6th Cir. 2007) .....................................................................................................9

*Marbury v. Madison*,
   5 U.S. 137, 2 L. Ed. 60 (1803) ................................................................................................17

*McClure v. Middletown Hosp. Ass'n*,
   603 F. Supp. 1365 (S.D. Ohio 1985) .......................................................................................17

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
   895 F.2d 266 (6th Cir. 1990) ...................................................................................................10

*Montgomery v. Louisiana*,
   136 S. Ct. 718 (2016), *as revised* (Jan. 27, 2016)..................................................11, 17, 18, 19

*Ohio Nat'l Life Ins. Co. v. United States*,
   922 F.2d 320 (6th Cir. 1990) ...................................................................................................10

*Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*,
   700 F.3d 829 (6th Cir. 2012) .....................................................................................................9

*Rogers v. Stratton Industries, Inc.*,
   798 F.2d 913 (6th Cir. 1986) ...................................................................................................10

*S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   479 F.2d 478 (6th Cir. 1973) ...................................................................................................10

*SEC v. Med. Comm. for Human Rights*,
   404 U.S. 403 (1972)..................................................................................................................11

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
   140 S. Ct. 2183, 207 L. Ed. 2d 494 (2020) .............................................................................22

*Sessions v. Morales-Santana*,
   137 S. Ct. 1678, 198 L. Ed. 2d 150 (2017) .............................................................................18

*U.S. v. U.S. Coin and Currency*,
   401 U.S. 715 (1971)..................................................................................................................19

*United States v. Baucum*,
   80 F.3d 539 (D.C. Cir. 1996) ............................................................................................11, 19

*Waldron v. United States*,
   146 F.2d 145 (1944)..................................................................................................................19

**Statutes**

47 U.S.C. § 227 ................................................................................................ *passim*

47 U.S.C. § 227(b)(1) ..................................................................................................13

47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................12, 19

47 U.S.C. § 227(b)(1)(B) ............................................................................................12

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, Tit. III, § 301, 129 Stat. 588 ................ 12, 13

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 ............. 11, 16

**Other Authorities**

Fed. R. Civ. P. 5.1 .....................................................................................................16

Fed. R. Civ. P. 12(b)(1) ..............................................................................................10

Fed. R. Civ. P. 12(b)(6) ................................................................................................9

Fed. R. Civ. P. 12(c) .....................................................................................................9

U.S. Const., Art. III, § 2 ..............................................................................................10

## MEMORANDUM

### I.    INTRODUCTION.

Tomorrow Energy Corp. ("Tomorrow Energy") moves for judgment on the pleadings as to the First Amended Class Action Complaint (Dkt. No. 23 (the "First Amended Complaint" or the "FAC")) of Philip Charvat ("Mr. Charvat") against Tomorrow Energy, on the ground that Mr. Charvat's claim is void as a matter of law.  Alternatively, Tomorrow Energy moves to dismiss the First Amended Complaint for lack of subject matter jurisdiction.[1]  Specifically, the claims of Mr. Charvat are based on an unconstitutional statutory scheme.

On February 27, 2020, Mr. Charvat filed the instant Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), class action against Tomorrow Energy for supposed telemarketing calls made to him without his prior express consent.  Mr. Charvat contends that Vestra Energy Inc. ("Vestra") violated subsection (b)(1)(B) of the statute by making prerecorded calls to his residential telephone number, and that Tomorrow Energy is vicariously liable for Vestra's conduct.

On July 6, 2020, the United States Supreme Court held in *Barr v. Am. Ass'n of Political Consultants, Inc.*, --- U.S. ----, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020) that the TCPA's so-called "robocall restriction"—found in section (b)(1) of the TCPA—was an unconstitutional content-based restriction when combined with the government-debt exception found in the same section because the government-debt exception allowed only government debt collectors to escape the robocall restriction.  The effect of the *Barr* ruling, then, is that the "robocall restrictions" were unconstitutional, and thus unenforceable, from the date of the enactment of the government-debt

---

[1] If the Court rules that it lacks subject matter jurisdiction over Mr. Charvat's claim, the Court can, and should, continue to exercise diversity jurisdiction over Tomorrow Energy's crossclaim against Vestra for breach of contract, express contractual indemnity and contribution, and declaratory relief.  (Dkt. No. 34, ¶ 8.)

exception in 2015 until the Court severed it in *Barr* in July 2020.  Several courts agree with this conclusion.  In short, Mr. Charvat is suing based on violations of an unconstitutional statute.

This conclusion holds notwithstanding that the Supreme Court took the additional step in *Barr* of preserving the TCPA as a whole by severing the government-debt exception from the robocall restriction.  The fact that the Supreme Court cured the constitutional infirmity by severing the carve-out such that the robocall restriction can now be enforced prospectively does not change the retrospective reality: that Tomorrow Energy cannot be vicariously liable for violation of a statutory provision that was unconstitutional at the time of the alleged violation.

This Court should, respectfully, enter judgment in favor of Tomorrow Energy or, in the alternative, dismiss Mr. Charvat's First Amended Complaint for lack of subject matter jurisdiction.

## II.    MR. CHARVAT'S ALLEGATIONS.

Mr. Charvat claims that he has two residential telephone numbers.  (FAC, ¶ 32.)  According to Mr. Charvat, Vestra placed prerecorded telemarketing calls to his residential telephone lines on October 30, 2019 (*id.*, ¶¶ 34, 36) and November 6, 2019 (*id.*, ¶ 43).  Mr. Charvat says that during the November 6, 2019 call, the Vestra agent "identified Tomorrow Energy as the company whose services were being offered in the telemarketing call."[2]  (*Id.*, ¶ 49.)  He asserts that he did not provide his consent for these calls.  (*Id.*, ¶¶ 3, 30.)

Mr. Charvat contends that Tomorrow Energy "is legally responsible for ensuring that Vestra … complied with the TCPA, even if Tomorrow Energy itself did not make the calls."  (*Id.*, ¶ 58.)  He alleges that Tomorrow Energy, Vestra, and Sean Grove, the owner and president of Vestra, violated subsection (b)(1)(B) of the TCPA by "initiat[ing] any telephone call to any

---

[2] For its part, Vestra denies that it called Mr. Charvat on October 30, 2019.  (Dkt. No. 40, ¶¶ 34, 36.)  Vestra admits that it called Mr. Charvat on November 6, 2019, but denies that it used a prerecorded message during the call.  (*Id.*, ¶ 43.)

residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." (*Id.*, ¶ 13; *see also id.*, ¶¶ 75-79.) Mr. Charvat seeks statutory penalties of no less than $500 per call (*id.*, ¶ 77) and to represent a nationwide class of all persons in the last four years "(a) to whom Vestra … made one or more non-emergency telephone calls; (b) promoting Tomorrow Energy's products or services; (c) to a residential telephone number; (d) using an artificial or prerecorded voice…." (*id.*, ¶ 65).

## III. LEGAL STANDARDS.

### A. Judgment on the Pleadings.

This Court recently summarized the legal standard for a motion for judgment on the pleadings as follows:

> Rule 12(c) provides that '[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.' The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as that used to address a motion to dismiss under Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).

> Rule 12(b)(6) permits dismissal of a lawsuit for 'failure to state a claim upon which relief can be granted.' To meet this standard, a party must allege sufficient facts to state a claim that is 'plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading will satisfy this plausibility standard if it contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.' *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (citation omitted). However, 'the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.' *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to 'provide a plausible basis for the claims in the complaint;' a recitation of facts intimating the 'mere possibility of misconduct' will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012).

In sum, '[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.' *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 479 F.2d 478, 480 (6th Cir. 1973).

*LaGuardia v. Designer Brands Inc.*, No. 20-2311, 2020 WL 6280910, at *7 (S.D. Ohio Oct. 27, 2020) (Marbley, J.).

### B. Lack of Subject Matter Jurisdiction.

This Court recently summarized the legal standard for a motion to dismiss for lack of subject matter jurisdiction as follows:

> When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the plaintiff has the burden of proving jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). Federal Rule of Civil Procedure 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally come in two varieties: (1) a facial attack on subject matter jurisdiction; and (2) a factual attack on subject matter jurisdiction. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (identifying the two types of 12(b)(1) motions to dismiss). Facial attacks on subject matter jurisdiction 'merely question the sufficiency of the pleading.' *Id.* A facial attack on subject matter jurisdiction is reviewed under the same standard as a 12(b)(6) motion to dismiss. *Id.*

*Foster v. Health Recovery Servs., Inc.*, No. 19-4453, 2020 WL 5943021, at *2 (S.D. Ohio Oct. 7, 2020) (Marbley, J.). Regardless of which form the motion ultimately takes, the plaintiff "has the burden of proving jurisdiction in order to survive the motion."[3] *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Additionally, the Constitution limits the federal judicial power to designated "cases" and "controversies." U.S. Const., Art. III, § 2. Thus, "[i]t is well settled that federal courts may act

---

[3] Though Tomorrow Energy denies that it placed the calls at issue and denies that it is vicariously liable for any calls that may have been made by Vestra to Mr. Charvat—meaning the Court also lacks jurisdiction because the complained-of conduct is not fairly traceable to Tomorrow Energy, which did not place the calls and did not authorize the calls—it requests that the Court dismiss this action based on the face of Mr. Charvat's First Amended Complaint alone.

only in the context of a justiciable case or controversy." *SEC v. Med. Comm. for Human Rights*, 404 U.S. 403, 407 (1972) (internal quotation omitted).  The Supreme Court has long held that "if the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes." *Ex parte Siebold*, 100 U.S. 371, 377 (1880); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016), *as revised* (Jan. 27, 2016) (sentence under unconstitutional law is void because state was deprived of authority to impose it); *United States v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)….").

## IV.    RELEVANT LAW.

### A.    The Government-Debt Exception to the TCPA.

Congress enacted the Telephone Consumer Protection Act of 1991 (TCPA), Pub. L. No. 102-243, 105 Stat. 2394, in light of evidence that consumers "consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." § 2(10), 105 Stat. 2394; *see* § 2(6), 105 Stat. 2394 ("Many consumers are outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers.").

As originally enacted, the TCPA prohibited both the "mak[ing of] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system [('ATDS')] or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service," and the "initiat[ion of] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications] Commission…." Pub. L. No. 102-243, 105 Stat. 2394.  The restriction on the use of an ATDS or

an artificial or prerecorded voice to call cellular phones was codified at 47 U.S.C. § 227(b)(1)(A)(iii).  The restriction on the use of an artificial or prerecorded voice to call a residential telephone line was codified at 47 U.S.C. § 227(b)(1)(B).  The two subsections are nearly the same, except that subsection (b)(1)(A)(iii) applies to calls to cellular phones while subsection (b)(1)(B) applies to calls to landlines, and subsection (b)(1)(A)(iii) restricts the use of an ATDS while subsection (b)(1)(B) does not restrict the use of an ATDS.

In 2015, Congress enacted an amendment to the TCPA entitled "debt collection improvements."  Bipartisan Budget Act of 2015, Pub. L. No. 114-74, Tit. III, § 301, 129 Stat. 588 (capitalization and emphasis omitted).  The amendment created exceptions to both subsections (b)(1)(A)(iii) and (b)(1)(B) for calls made to collect government debts.  Specifically, the Bipartisan Budget Act of 2015 amended subsection (b)(1)(A)(iii) "by inserting 'unless such call is made solely to collect a debt owed to or guaranteed by the United States'" and amended subsection (b)(1)(B) "by inserting 'is made solely pursuant to the collection of a debt owed to or guaranteed by the United States.'"  § 301(a)(1) 129 Stat. 588.  Thereafter, the TCPA read, in relevant part:

**(b) Restrictions on use of automated telephone equipment**

**(1) Prohibitions**

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-- …

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, <u>unless such call is made solely to collect a debt owed to or guaranteed by the United States</u>;

-12-

> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, <u>is made solely pursuant to the collection of a debt owed to or guaranteed by the United States</u>, or is exempted by rule or order by the Commission under paragraph (2)(B);

47 U.S.C. § 227(b)(1) (underlines used to identify the language added in 2015). The effect of this amendment was to allow government debt collectors to place calls that other parties could not otherwise place. The exception created by the Bipartisan Budget Act of 2015 is referred to herein as the "government-debt exception."

### B.     *Barr v. Am. Ass'n of Political Consultants, Inc.*

In *Barr*, an association of political consultants and various political organizations who wished to call voters on their cell phones using an ATDS or an artificial or prerecorded voice, for the purposes of soliciting political donations and advising on political and governmental issues, sued the Attorney General and the FCC in the Eastern District of North Carolina, alleging that the government-debt exception effects an impermissible form of content-based discrimination, in violation of the Free Speech Clause of the First Amendment. *Am. Ass'n of Political Consultants v. Sessions*, 323 F. Supp. 3d 737, 739 (E.D.N.C. 2018). The district court granted summary judgment in favor of the government, rejecting the political groups' claim that the TCPA violates the First Amendment. *Id.* Although the district court determined that the government-debt exception to subsection (b)(1)(A)(iii) "makes content distinctions on its face" ((*id.* at 743) (citation omitted)), the court concluded that the exception survives strict scrutiny (*id.* at 743-47).

The Fourth Circuit Court of Appeals vacated the judgment of the district court. *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159 (4th Cir. 2019). The court of appeals agreed that the government-debt exception "facially distinguishes between phone calls on the basis of their content" and therefore is subject to strict scrutiny. *Id.* at 166. Unlike the

district court, however, the court of appeals held that the government-debt exception "fails strict scrutiny review." *Id.* at 167. The court concluded that the government-debt exception renders subsection (b)(1)(A)(iii)'s restriction on the use of an ATDS or an artificial or prerecorded voice "fatally underinclusive" "by authorizing many of the intrusive calls that the automated call ban was enacted to prohibit," (*id.* at 167-68), and by "imped[ing] the privacy interests of the automated call ban" (*id.* at 170). The court therefore held that the government-debt exception "violates the Free Speech Clause." *Id.* Turning to the question of the appropriate remedy, the court of appeals directed that the government-debt exception be severed from the rest of the TCPA, leaving subsection (b)(1)(A)(iii)'s restriction on the use of an ATDS or an artificial or prerecorded voice intact. *Id.* at 171.

In January, the Supreme Court granted certiorari in *Barr*, framing the issues as "[w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment, and whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." *See* 2019 WL 6115075, at *I (Pet. for Writ. of Cert.); 140 S. Ct. 812, 205 L. Ed. 2d 449 (Jan. 10, 2020) (order granting the petition).

The Supreme Court did not grant certiorari to consider whether the statute was enforceable pre-severance; nor did the parties ever brief that issue. *Id.* Since *Barr* was a direct challenge to subsection (b)(1)(A)(iii)'s restriction on the use of an ATDS or an artificial or prerecorded voice, there was no underlying litigation and, thus, no occasion for the Supreme Court to decide the impact of the decision on pending TCPA cases like this one. *See id.*

On July 6, 2020, the Supreme Court decided *Barr*. The Court's Opinion was a fractured plurality, but a majority of Justices still agreed that subsection (b)(1)(A)(iii)'s restriction on the use of an ATDS or an artificial or prerecorded voice—which the Court referred to as "the robocall

restriction"—was an unconstitutional content-based restriction when combined with the government-debt exception.  *Barr*, 140 S. Ct. at 2346 ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based.  The answer is yes.").  Specifically, the robocall restriction combined with the government-debt exception "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment."  *Id.* at 2344.  Because the robocall restriction was content-based, it was subject to strict scrutiny, which it failed to pass.  *Id.*  Six Justices agreed with this conclusion.  *Id.*

The Court next turned to severance.  Although the plaintiffs did not request severance, the Court nonetheless proceeded to analyze whether severance of the offending provision of the statute would be proper.  In the plurality opinion by Justice Kavanaugh, joined by Chief Justice Roberts and Justice Alito, the Court concluded that severance of the government-debt exception is proper. *Id.* at 2354.  Justice Sotomayor concurred in the judgment.  *Id.* at 2357.  Justices Breyer, Ginsburg, and Kagan would not have found that the government-debt exception violates the First Amendment but concurred with Justice Kavanaugh's conclusion that the government-debt exception is severable.  *Id.* at 2363.  Justice Gorsuch dissented and Justice Thomas joined in the dissent on the basis that severance is not proper in the context of the case (instead, Justices Gorsuch and Thomas would have enjoined enforcement of the robocall restriction altogether).  *Id.* at 2367.

### C.    The Supreme Court's Finding That the Government-Debt Exception Is Unconstitutional Extends to Subsection (b)(1)(B).

As a preliminary matter, Tomorrow Energy notes that the Court in *Barr* did not directly decide the constitutionality of subsection (b)(1)(B) because the political groups only wished to call cellular phones and not landlines.  *See* 140 S. Ct. at 2345 n.3 ("Plaintiffs have not challenged the TCPA's separate restriction on robocalls to home phones.")  However, as discussed above,

subsection (b)(1)(a)(iii) and subsection (b)(1)(B) are functionally identical, with only two differences.  First, subsection (b)(1)(a)(iii) applies to calls to cellular telephone lines while subsection (b)(1)(B) applies to calls to residential telephone lines.  Second, subsection (b)(1)(a)(iii) restricts the use of an ATDS, an artificial voice, or a prerecorded voice, while subsection (b)(1)(B) restricts the use of an artificial voice or a prerecorded voice but not the use of an ATDS.  Both subsections were amended by Congress in 2015 in order to carve out exceptions for calls made to collect debt owed to the government.  Moreover, the Supreme Court referred to both the use of an ATDS *and* an artificial or prerecorded voice together as "the robocall restriction."

The Court in *Barr* ruled that the addition of the government-debt exception to subsection (b)(1)(A)(iii)'s robocall restriction rendered subsection (b)(1)(A)(iii) an unconstitutional content-based restriction.  It follows that the addition of the government-debt exception to subsection (b)(1)(B)'s robocall restriction also renders subsection (b)(1)(B) an unconstitutional content-based restriction.  Both subsections were enacted in light of evidence that consumers "consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy."  § 2(10), 105 Stat. 2394.  In light of the foregoing, it would be illogical to decline to extend *Barr*'s reasoning to subsection (b)(1)(B), simply because it governs calls to residential telephone lines as opposed to calls to cellular telephone lines.

In evaluating this Motion, the Court should, respectfully, do so with the common sense understanding that *Barr*'s conclusion is equally applicable to subsection (b)(1)(B).[4]

---

[4] Because the Supreme Court decided the constitutional challenge to the government-debt exception in *Barr*, Federal Rule of Civil Procedure 5.1 does not apply to the instant filing and a notice of constitutional challenge is not required.  *See* Fed. R. Civ. P. 5.1.  If the Court determines otherwise, Tomorrow Energy will promptly file such a notice.

## V.  ARGUMENT.

Although the Supreme Court severed the unconstitutional portion of the statute, severance can only be applied prospectively.  The robocall restriction is enforceable for calls made from 1991 to November 2, 2015, i.e., the time period prior to the enactment of the government-debt exception.  The robocall restriction is also enforceable for calls made after July 6, 2020, the date of the final judgment in *Barr*.  But for calls made from November 2, 2015 through entry of final judgment in *Barr*, the robocall restriction remains unconstitutional on its face and cannot be enforced against any caller.  *See, e.g.*, *Lindenbaum v. Realgy, LLC*, No. 19-2862, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Creasy v. Charter Commc'ns, Inc.*, --- F. Supp. 3d ----, 2020 WL 5761117 (E.D. La. Sept. 28, 2020).  The unconstitutional version of the robocall restriction is what applied when Mr. Charvat claims he was called on October 30, 2019 and November 6, 2019, and that fact renders Mr. Charvat's claim void as a matter of law.

### A.  *Barr* **Dictates that Mr. Charvat's Claims Are Void as a Matter of Law.**

"'[A]n unconstitutional law is void, and is as no law.'"  *Montgomery*, 136 S. Ct. at 731 (quoting *Ex parte Siebold*, 100 U.S. at 376).  A violation of such a law is "not merely erroneous, but is illegal and void, and . . . [bestows upon] the Circuit Court . . . no jurisdiction of the causes."  *Ex parte Siebold*, 100 U.S. at 376-77; *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759-60 (1995) ("A court does not—in the nature of things it *can* not—give a 'remedy' for an unconstitutional statute, since an unconstitutional statute is not in itself a cognizable 'wrong.'") (emphasis in original and citing *Marbury v. Madison*, 5 U.S. 137, 178, 2 L. Ed. 60 (1803)) (Scalia, J. concurring); *McClure v. Middletown Hosp. Ass'n*, 603 F. Supp. 1365, 1368 (S.D. Ohio 1985) ("We accept the proposition that unconstitutional statutes are generally void *ab initio*[.]").

Mr. Charvat's lawsuit is based on alleged violations of the robocall restriction prior to July 6, 2020, at a time which the Supreme Court in *Barr* determined this ban was unconstitutional (and

prior to the Supreme Court's "cure" of the constitutional infirmity through severance of the government-debt exception).  Tomorrow Energy cannot be vicariously liable for Vestra's violation of an unconstitutional statute.  Nor can this Court provide Mr. Charvat a remedy for a violation of an unconstitutional statute.  Accordingly, dismissal is warranted as a matter of law.

The necessity of this result is illustrated by numerous cases.  Indeed, imposing liability for speech that allegedly violates an unconstitutional statute is irreconcilable with Supreme Court precedent and fundamental due process and equal protection principles.  In *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972), the Supreme Court noted, in a constitutional challenge to a content-based speech restriction, that courts "must consider the facial constitutionality of the ordinance in effect when [the defendant] was arrested and convicted."  In other words, the relevant inquiry is whether the offending statute was constitutional at the time the violation occurred, not whether it has subsequently been cured by judicial or legislative action.  Thus, in this case, the robocall restriction must be assessed at the time Vestra allegedly committed the violations, which were all prior to July 6, 2020, at a time the ban illegally favored certain speakers.  *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24, 198 L. Ed. 2d 150 (2017) (noting that a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity"); *see also, e.g.*, *Leonard v. Robinson*, 477 F.3d 347, 358 (6th Cir. 2007) (finding that state statute regulating speech in presence of women and children could not provide probable cause for arrest of citizen at township board meeting, inasmuch as statute had been found unconstitutional).

Similarly, in *Montgomery*, the Supreme Court addressed whether a new constitutional ruling from 2012 interpreting the Eighth Amendment to ban mandatory life sentences for juvenile homicide offenders must be applied retroactively to a juvenile who had been sentenced to life

without parole in 1963.  *See* 136 S. Ct. at 723.  The Supreme Court concluded the answer is yes: a "penalty imposed pursuant to an unconstitutional law is no less void because the prisoner's sentence became final before the law was held unconstitutional.  There is no grandfather clause that permits States to enforce punishments the Constitution forbids.  To conclude otherwise would undercut the Constitution's substantive guarantees."  *Id.* at 730 (citing *U.S. v. U.S. Coin and Currency*, 401 U.S. 715, 724 (1971) ("'No circumstances call more for the invocation of a rule of complete retroactivity' than when "'the conduct being penalized is constitutionally immune from punishment.'")); *see also Waldron v. United States*, 146 F.2d 145, 147-148 (1944) (vacating judgment against criminal defendant based on violation of unconstitutional statute, explaining "inspection of the record discloses clearly that the court was without jurisdiction to enter the judgment").

These decisions unanimously recognize the fundamental unfairness of imposing penalties for violations of a statute which was concededly unconstitutional—and thus "void"—when the alleged violations occurred.  *See Baucum*, 80 F.3d at 540-41 ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]").  It follows that Tomorrow Energy cannot be penalized in ongoing litigation for calls made pre-severance, in violation of an unconstitutional provision, when the government debt collectors were excused.  Indeed, such a result would vitiate the majority holding of *Barr* (that the robocall restriction combined with the government-debt exception is unconstitutional).

Unsurprisingly, courts that have recently examined the matter have held that calls made prior to the holding in *Barr* are not actionable.  In *Creasy*, for example, the court agreed that "the unconstitutional amended version of § 227(b)(1)(A)(iii) is what applied to Charter at the time of

the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction to adjudicate Charter's liability with regard to such communications."  2020 WL 5761117, at *6.  In *Lindenbaum*, a case which involved both a prerecorded call to a cellular telephone *and* a prerecorded call to a landline made prior to the ruling in *Barr* (2020 WL 6361915, at *1), the court dismissed the action because "at the time defendants engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction" (*id.*, at *7).  The court concluded that it "cannot wave a magic wand and make that constitutional violation disappear.  Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter."  *Id.*

### B.  The Dicta in Footnote 12 of *Barr* Does Not Change the Result.

Severance of the government-debt exception restored the TCPA to its pre-amendment constitutional standing.  Thus, it is undisputed that prior to the amendment in 2015 and after the issuance of a final judgment in *Barr* on July 6, 2020, the robocall restriction would apply.  But, at the time Tomorrow Energy allegedly authorized Vestra to make prerecorded calls to Mr. Charvat on October 30, 2019 and November 6, 2019, the robocall restriction was facially invalid and cannot be enforced.

In footnote 12, however, Justice Kavanaugh, writing for the three-Justice plurality, stated:

[A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate…  On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.

*Barr*, 140 S. Ct. at 2355 n.12 (citation omitted).  This footnote, which is not binding but is merely persuasive authority,[5] does not change the conclusion that Mr. Charvat's pre-severance claims are void as a matter of law.

Justice Gorsuch's dissent noted:

> In an effort to mitigate at least some of these problems, Justice KAVANAUGH suggests that the ban on government debt collection calls announced today might be applied only prospectively.  *See ante*, at ——, n. 12.  But prospective decision making has never been easy to square with the judicial power.  *See, e.g., James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 548–549, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) (Scalia, J., concurring in judgment) (judicial power is limited to 'discerning what the law is, rather than decreeing ... what it will tomorrow be').  And a holding that shields only government debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate.

*Id.* at 2366.  Thus, as the dissent confirms, *Barr* did not address whether severance of the government-debt exception applies retroactively to cases currently pending.

Outside of the dicta in footnote 12, there is no support for the conclusion that severance of the government-debt exception should be applied retroactively so as to erase the existence of the exception.  The footnote is most reasonably interpreted as referring to only past judgments.  In other words, the plurality did not conclude that *Barr* negates or reverses liability against parties whose litigations had already been adjudicated.  This is consistent with prior Supreme Court precedent that recognizes "a distinction between the application of a change in the law that takes place while a case is on direct review on the one hand, and its effect on a final judgment under collateral attack, on the other hand."  *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 710-711 (1974).  This is also the only way to read the footnote consistent with the Supreme Court's

---

[5] "This footnote is merely persuasive, as opposed to mandatory, because it appears in an opinion commanding the votes of only three Justices, and because… it constitutes mere 'obiter dictum.'" *Creasy*, 2020 WL 5761117, at *4 n.4; *Lindenbaum*, 2020 WL 6361915, at *5 ("[T]he Court finds that footnote 12 constitutes non-binding *obitur dictum*.").

recent decision in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 207 L. Ed. 2d 494 (2020), in which the same three Justices who joined the plurality in *Barr*—and just one week before *Barr* was decided—questioned the viability of actions taken by the Consumer Financial Protection Bureau during the time its leadership structure was unconstitutional. *See* 140 S. Ct. at 2208-09 (severing provision which would render agency decisions unconstitutional, but remanding the case to address whether the government's argument that the "civil investigative demand" was validly ratified).[6]

This Court should, respectfully, dismiss Mr. Charvat's claim and join other courts that have recently held that "the entirety of the pre-severance version … is void because it itself was repugnant to the Constitution before the Supreme Court restored it to constitutional health in [*Barr*]." *Creasy*, 2020 WL 5761117, at *5; *Lindenbaum*, 2020 WL 6361915, at *7 ("The fact remains that at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written.  And, a later amendment to a statute cannot be retroactively applied…  It would be an odd result to say the least if the judiciary could accomplish by severance that which Congress could not accomplish by way of amendment." (citations omitted)).

---

[6] The statute at issue in *Seila Law* violated Article II's separation of powers mandate because the head of the agency could be removed by the President only under the limited circumstances of inefficiency, neglect, or malfeasance.  *Seila Law*, 140 S. Ct. at 2197.  The Supreme Court severed the removal protection and concluded that "the agency may therefore continue to operate, but its Director...must be removable by the President at will."  *Id.* at 2192.  As the court in *Lindenbaum* recently observed, "[i]f severance applied retroactively, there would be no need for the past acts to be ratified."  *Lindenbaum*, 2020 WL 6361915, at *6 n.1.

## VI.    CONCLUSION.

For the foregoing reasons, Tomorrow Energy respectfully requests that the Court enter judgment on the pleadings in favor of Tomorrow Energy against the First Amended Complaint by Mr. Charvat.  Alternatively, the Court should dismiss Mr. Charvat's First Amended Complaint for lack of subject matter jurisdiction.

DATED:  November 5, 2020                 BLANK ROME LLP

By: /s/ David J. Oberly
      David Oberly
      doberly@blankrome.com
      1700 PNC Center
      201 East Fifth Street
      Cincinnati, OH 45202
      Telephone:513.362.8700
      Facsimile: 513.362.8787

      Ana Tagvoryan (admitted *pro hac vice*)
      atagvoryan@blankrome.com
      Harrison Brown (admitted *pro hac vice*)
      hbrown@blankrome.com
      2029 Century Park East, 6th Floor
      Los Angeles, CA 90067
      Telephone:424.239.3400
      Facsimile: 424.239.3434

Attorneys for
TOMORROW ENERGY CORP.

## <u>CERTIFICATE OF COMPLIANCE</u>

I, David J. Oberly, hereby certify that the foregoing motion complies with the page limitations of the Local Civil Rules of the United States District Court for the Southern District of Ohio.

BLANK ROME LLP

By: /s/ David J. Oberly
    David J. Oberly

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing motion to be served on all counsel of record on

November 5, 2020 via the Court's ECF filing system upon all counsel of record, as follows:

MURRAY MURPHY MOUL + BASIL LLP      PARONICH LAW, P.C.
Brian K Murphy                                             Anthony Paronich
murphy@mmmb.com                                    anthony@paronichlaw.com
Jonathan P. Misny                                         350 Lincoln Street, Suite 2400
misny@mmmb.com                                       Hingham, MA 02043
1114 Dublin Road                                         Tel.:    617.485.0018
Columbus, OH 43215                                   Fax:    508.318.8100
Tel.:    614.488.0400
Fax:    614.488.0401

Attorneys for
PHILIP CHARVAT

FINNEY LAW FIRM, LLC
Bradley Michael Gibson
Brad@finneylawfirm.com
Casey A. Jones
casey@finneylawfirm.com
4270 Ivy Pointe Way, Suite 225
Cincinnati, OH 45245
Tel.:    513.943.6650
Fax:    513.943.6669

Attorneys for
VESTRA ENERGY, INC. and SEAN GROVE

By: /s/ David J. Oberly
       David J. Oberly